UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN HODGES,

    Petitioner,

v.                                Case No. 8:22-cv-163-MSS-CPT

KURT HOFFMAN,

    Respondent.
_____/

**O R D E R**

Hodges, a pretrial detainee in state court, petitions (Docs. 1 and 2) for a writ of habeas corpus under 28 U.S.C. § 2241 and asserts that the state court's imposition of bail that he claims he cannot afford violates his federal right to substantive and procedural due process. After reviewing the response (Doc. 15), the reply (Doc. 18), and the relevant state court record (Docs. 1-1, 1-2, 4-1, 15-1, 15-2, 15-3, 15-4, 20-1, 20-2, and 20-3), the Court **DENIES** the petition.

PROCEDURAL HISTORY

A police officer arrested Hodges for burglary of an occupied dwelling, a second-degree felony, and petit theft, a misdemeanor. (Doc. 20-2 at 6) A probable cause affidavit supporting his arrest for both offenses states that the officer responded to an area in North Port, Florida after someone complained that a suspicious person was looking into parked cars and around houses. (Doc. 20-2 at 8) When the officer arrived, an individual approached the officer and said that a surveillance camera on his front porch recorded a male take his bicycle. (Doc. 20-2 at 8) The officer obtained the surveillance video and distributed the video to other officers

1

at his department. (Doc. 20-2 at 8) Another officer identified the male in the video as Hodges. (Doc. 20-2 at 8)

A uniform bond schedule set bond at $7,500.00 for the burglary and $500.00 for the petit theft. (Doc. 20-2 at 6) *In re: Bond Schedule for Crim. Proceeds.*, Admin. Order 2013-6.3 (Fla. 12th Jud. Cir. Feb. 5, 2013). Pretrial services prepared a bail determination report which showed that Hodges had prior convictions and had failed to appear at court hearings seventeen times. (Doc. 20-2 at 11–12) At a first appearance hearing, a judge found probable cause for both crimes and reduced the bond for the burglary to $5,000.00. (Doc. 1-2 at 3–4)

An information charged Hodges with both crimes. (Doc. 1-2 at 5–7) Hodges moved to reduce the bond because he could not afford the bond. (Doc. 1-2 at 8) He asserted that (1) the unaffordable bond amounted to pretrial detention, (2) pretrial detention implicates a fundamental right to freedom of physical restraint, (3) substantive due process requires that the trial court determine that no less-restrictive alternative will address the prosecution's legitimate interests before imposing a monetary bond, and (4) procedural due process requires that the prosecution justify the need for a monetary bond by clear and convincing evidence. (Doc. 1-2 at 9–10)

Hodges asked that the trial court impose a monetary bond that Hodges could afford, determine whether less-restrictive alternatives would achieve the prosecution's legitimate interests in a monetary bond, and determine whether the prosecution proved by clear and convincing evidence that no nonmonetary condition or lesser monetary bond would achieve the prosecution's legitimate interests. (Doc. 1-2 at 11)

The trial court held a hearing on the motion to reduce the bond. At the hearing, Hodges testified that, if released on bond he would live at a homeless shelter, he owns a

pressure washing business, he has lived in North Port for six to eight months, he would rely on Uber for transportation to court hearings, his great aunt lives in Fort Myers and his brother lives in Lakewood Ranch, and he attends support group meetings at local churches. (Doc. 1-2 at 15–17) Hodges agreed to attend three meetings a week as a condition of bond, assured that he would attend all court hearings, agreed to submit to random drug and alcohol testing, and testified that he could afford only $100.00 for bond. (Doc. 1-2 at 17–19) Trial counsel asked the trial court to reduce the bond for the burglary to $900.00 and reduce the bond for the petit theft to $100.00 for a total of $1,000.00, so that Mitchell could post a ten-percent bond to a bondsman. (Doc. 1-2 at 19) Trial counsel further asked the trial court to impose the conditions proposed by Hodges, instead of the higher bond. (Doc. 1-2 at 19–20)

The prosecutor asked the trial court to deny the motion based on the nature and circumstances of the charged offenses and Hodges's criminal history. (Doc. 1-2 at 20) The prosecutor advised that, between 1998 and 2011, Hodges obtained over ten criminal convictions in California, including convictions for burglary, robbery, and possession of burglary tools. (Doc. 1-2 at 20) The prosecutor further advised that Hodges had obtained a criminal conviction every year since his arrival in Sarasota County. (Doc. 1-2 at 20) Hodges had an additional pending petit theft case[1] and had failed to appear in other criminal cases seventeen times. (Doc. 1-2 at 20) Based on this criminal history, the prosecutor argued that Hodges would not appear in court if released on a reduced bond. (Doc. 1-2 at 20)

The trial court denied the motion to reduce bond as follows (Doc. 1-2 at 21):

---

[1] A probable cause affidavit supporting Hodges's arrest for the second petit theft stated that surveillance video at the Salvation Army recorded Hodges removing a lock from the complainant's bicycle and replacing it with another lock. (Doc. 20-2 at 15) The complainant identified Hodges in the surveillance video because Hodges had filled out paperwork for admission to the Salvation Army. (Doc. 20-2 at 15)

3

> [Court:]   Alright. [ ] I reviewed the probable cause affidavit for the misdemeanor petit theft that's pending. I should note that Mr. Hodges was not out of custody [ ] pending the petit theft charge; an information was filed by the State in July. However, this was a non-arrest case in which a summons was [ ] issued. In [the petit theft] case, it's alleged in the PCA that the defendant, Mr. Hodges, was at [the] Salvation Army trying to get into a program there and had taken a lock off another [ ] person's bicycle. [T]he allegation in this case is that the Defendant [ ] took a bike from another person's porch. When I listen and hear that there's a prior history of theft and violence with a robbery — of course, [robbery] includes an element of violence coupled with the theft element — and when I [ ] also [ ] consider seventeen prior failures to appear, I think the bond, as set, is appropriate in order to [ ] [e]nsure the safety of the community and to [e]nsure that Mr. Hodges appears in court. [S]o the motion to reduce the bond will be denied, Mr. Hodges. The bonds as set will remain the same.

Hodges appealed the trial court's ruling by petitioning the state appellate court for a writ of habeas corpus. (Doc. 1-1) The state appellate court denied the state petition in a decision without a written opinion. (Doc. 4-1 at 1) Hodges's federal petition follows.

## STANDARD OF REVIEW

A state court criminal defendant may challenge his pretrial detention in federal court by petitioning for a writ of habeas corpus under 28 U.S.C. § 2241. *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1261 (11th Cir. 2004); *Thomas v. Crosby*, 371 F.3d 782, 786 (11th Cir. 2004). The petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

4

"Section 2241 proceedings [ ] are governed by the common law requirements for habeas petitions." *Thomas*, 371 F.3d at 812 (Tjoflat, J., concurring). Under common law, the petitioner must exhaust the remedies available in state court. *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 489–92 (1973); *Fain v. Duff*, 488 F.2d 218, 223 (5th Cir. 1973). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).

Also, a federal court must defer to the state court's factual findings unless the findings lack fair support in the record. *Simon v. Woodson*, 454 F.2d 161, 163 (5th Cir. 1972); *Townsend v. Sain*, 372 U.S. 293, 313 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). *Accord Thompson v. Keohane*, 516 U.S. 99, 109 (1995) ("*Townsend* counseled that, if the habeas petitioner has had in state court 'a full and fair hearing . . . resulting in reliable findings,' the federal court 'ordinarily should . . . accept the facts as found' by the state tribunal. Section 2254(d) essentially 'elevated [the *Townsend* Court's] exhortation into a mandatory presumption of correctness.'") (citation omitted).

## ANALYSIS

### *Younger* Abstention

The Respondent asserts that this Court should abstain from reviewing Hodges's petition under *Younger v. Harris*, 401 U.S. 37 (1971). (Doc. 15 at 10–12) Hodges responds that, because he does not ask the federal court to enjoin the state criminal prosecution, abstention under *Younger* does not apply. (Doc. 18 at 3–4)

5

*Walker v. City of Calhoun, Ga.*, 901 F.3d 1245 (11th Cir. 2018), resolves the dispute. In *Walker*, the plaintiff, an indigent who was denied an affordable bond, sued the City of Calhoun for constitutional violations under 42 U.S.C. § 1983. *Id.* at 1251–53, 1255. The district court granted a preliminary injunction, and the city appealed. *Id.* at 1253–54. The city asserted that abstention under *Younger* precluded review by the federal court. *Id.* at 1254. *Walker* held that abstention did not apply because the plaintiff did not ask the federal court to enjoin the state criminal prosecution and instead asked for a prompt bail determination. *Id.* at 1254.

*Walker*, 901 F.3d at 1254, cited *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (citations omitted), which further explained:

> The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger v. Harris*, 401 U.S. 37 (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.

Like the plaintiffs in *Walker* and *Pugh*, Hodges demands pretrial release and does not ask this Court to interfere with his state criminal prosecution. (Doc. 1 at 7–11) Consequently, abstention under *Younger* does not apply.

The Respondent contends that *O'Shea v. Littleton*, 414 U.S. 488 (1974) holds to the contrary. (Doc. 15 at 12) But *Walker*, 901 F.3d at 1254–55, distinguished *O'Shea* because "the plaintiffs [in *O'Shea*] sought 'an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials,' which amounted to 'an ongoing federal audit of state criminal proceedings.'" Hodges does not ask

6

for relief for other defendants in future criminal cases and instead only demands relief in his criminal case. (Doc. 1 at 10–11)

Lastly, applying abstention under *Younger* would run contrary to opinions which hold that a state court criminal defendant may challenge bail in federal habeas proceedings. Consequently, the Court may review the merits of Hodges's claims. *Simon*, 454 F.2d at 162; *Thomas*, 371 F.3d at 786–87 (quoting *Medberry v. Crosby*, 351 F.3d 1049, 1060 (11th Cir. 2003)). *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018); *Atkins v. Michigan*, 644 F.2d 543, 549–50 (6th Cir. 1981).

**Ground One**

Hodges asserts that the state court violated his federal right to due process by imposing a bond he could not afford without requiring the prosecution to demonstrate that no less restrictive alternatives could achieve its legitimate interests. (Docs. 1 at 7–8 and 2 at 12–19) He contends that pretrial liberty is a fundamental right, and strict scrutiny applies to a bond determination. (Doc. 2 at 9–10, 12–14)

### Right Against Excessive Bail or Right to Due Process

The Respondent cites *Graham v. Connor*, 490 U.S. 386 (1989), and asserts that Hodges may not seek relief under his federal right to due process because the Eighth Amendment specifically protects against unconstitutional bond. (Doc. 15 at 14) Hodges contends that the Eighth Amendment prohibits only excessive bond and does not address whether an unaffordable bond deprives Hodges of substantive due process under the Fourteenth Amendment. (Doc. 18 at 15–17)

Again, *Walker* resolves the dispute. In *Walker*, the plaintiff asserted that the unaffordable bond violated equal protection under the Fourteenth Amendment. *Walker*, 901

F.3d at 1253, 1257. The district court granted a preliminary injunction after concluding that the standard bond schedule unconstitutionally allowed arrestees with means to immediately post bond and required arrestees without means to wait forty-eight hours for a hearing. *Id.* at 1257. The city argued that the Eighth Amendment applied because *Graham* requires that "'[t]he validity of the claim must . . . be judged by reference to the specific constitutional standard which governs that right.'" *Id.* at 1258 (quoting *Graham*, 490 U.S. at 394).

*Walker*, 901 F.3d at 1259, rejected this argument and held that the plaintiff could proceed with the "hybrid due process and equal protection claim" in part because the claim "challenge[d] not the amount and conditions of bail *per se*, but the process by which those terms are set . . . ." *See also O'Donnell v. Harris County*, 892 F.3d 147, 157 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas Cty., Tex.*, 22 F.4th 522, 540 (5th Cir. 2022).

Consistent with this holding, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)) explains:

> *Graham* 'does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision . . ., the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'

*John Corp. v. City of Houston*, 214 F.3d 573, 582 (5th Cir. 2000) ("The purpose of *Graham* is to avoid expanding the concept of substantive due process where another constitutional provision protects individuals against the challenged governmental action. In essence, to the extent that there is duplication, the more explicit textual source of constitutional protection is to be used to assess the validity of the challenged action.") (citations omitted).

8

Hodges does not challenge the bond as unconstitutionally excessive. (Docs. 2 at 6–7 and 18 at 13–14)  Like the "hybrid due process and equal protection claim" in *Walker*, Hodges's substantive due process claim challenges the process by which the state court set the amount and conditions of bond. He asserts that, before imposing an unaffordable bond, a court must require the prosecution to demonstrate that no less restrictive alternatives to the bond could achieve its legitimate interests. (Docs. 1 at 7–8 and 2 at 14–17) Accordingly, the Court reviews the claim under the Fourteenth Amendment's substantive due process clause. *Walker*, 901 F.3d at 1259.

**Merits**

Hodges asserts that *United States v. Salerno*, 481 U.S. 739 (1987), holds that pretrial liberty is a fundamental right. Therefore, he contends that a court must strictly scrutinize the imposition of an unaffordable bond. (Doc. 2 at 12–13) He contends that the prosecution must demonstrate that the imposition of an unaffordable bond is both necessary and narrowly tailored to serve a compelling state interest. (Doc. 2 at 13–14)

*Walker*, 901 F.3d at 1262–63 (citations omitted), rejected this argument and held that *Salerno* applies a "lenient" procedural due process analysis — not heightened scrutiny:

> In *Salerno*, the Court recognized that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"; but it also stated that an arrestee may be incarcerated before trial "if he presents a risk of flight or a danger to witnesses." The Court ultimately permitted preventative detention if the arrestee "pose[s] a threat to the safety of individuals or to the community which no condition of release can dispel." Walker contends that this form of analysis is tantamount to heightened scrutiny and that it should be applied to his case.
>
> But the *Salerno* Court's analysis was much closer to a relatively lenient procedural due process analysis than it was any form of heightened scrutiny. Rather than asking if preventative detention

> of dangerous defendants served a compelling or important State interest and then demanding relatively narrow tailoring, the Court employed a general due process balancing test between the State's interest and the detainee's. The Court's analysis borrowed heavily from a prior decision, *Schall v. Martin*, [467 U.S. 253 (1984),] in which the Court upheld preventative detention of likely-to-reoffend juveniles based on an analysis that asked "whether preventative detention . . . is compatible with the 'fundamental fairness' required by due process." Answering that question required "[t]wo separate inquiries[:] . . . First, does preventive detention . . . serve a legitimate state objective? And, second, are the procedural safeguards . . . adequate to authorize the pretrial detention?" That analysis is a far cry from strict — or even intermediate — scrutiny.

Other U.S. Supreme Court opinions cited by Hodges do not hold that a defendant pretrial detained for a criminal charge has a fundamental right to liberty. *Foucha v. Louisiana*, 504 U.S. 71 (1992) (civil commitment of individual suffering mental illness); *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (detention of individual declared enemy combatant); *Reno v. Flores*, 507 U.S. 292 (1993) (detention of juvenile alien suspected deportable).[2]

Consequently, Hodges must demonstrate that the trial court's ruling was not rationally related to a legitimate government interest. *Holland v. Rosen*, 895 F.3d 272, 296 (3d Cir. 2018). *Salerno* explained that the government's legitimate and compelling interest in community safety and securing the presence of a criminal defendant in court who may be a risk of flight can outweigh an individual's liberty interest. *Salerno*, 481 U.S. at 748–49; *Walker*, 901 F.3d at 1263–65. Hodges concedes that Rule 3.131(b)(1), Florida Rules of Criminal Procedure,

---

[2] Additional U.S. Supreme Court opinions cited by Hodges review an equal protection claim in *Walker* concerning discrimination between an indigent individual who cannot pay bail or a fine and a nonindigent individual who can pay bail or a fine. *Bearden v. Georgia*, 461 U.S. 660 (1983); *Tate v. Short*, 401 U.S. 395 (1971); *Williams v. Illinois*, 399 U.S. 235 (1970); *Griffin v. Illinois*, 351 U.S. 12 (1956); *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978). Hodges asserts a substantive due process claim — not an equal protection claim. (Docs. 1 at 7–8, 2 at 12–19, and 18 at 12–14).

complies with federal due process by requiring the trial judge to consider and reject less-restrictive alternatives before imposing monetary bail. (Doc. 2 at 16–17)

Rule 3.131(b)(1) requires "a presumption in favor of release on nonmonetary conditions for any person who is granted pretrial release." Subsection (b)(1) of the Rule (bolding added) further states:

> The judicial officer shall impose the first of the following conditions of release **that will reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process**; or, if no single condition gives that assurance, shall impose any combination of the following conditions:
>
> (A) personal recognizance of the defendant;
>
> (B) execution of an unsecured appearance bond in an amount specified by the judge;
>
> (C) placement of restrictions on the travel, association, or place of abode of the defendant during the period of release;
>
> (D) placement of the defendant in the custody of a designated person or organization agreeing to supervise the defendant;
>
> (E) execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; provided, however, that any criminal defendant who is required to meet monetary bail or bail with any monetary component may satisfy the bail by providing an appearance bond; or
>
> (F) any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.[3]

---

[3] Rule 3.131(b)(3), Florida Rules of Criminal Procedure, provides: "In determining whether to release a defendant on bail or other conditions, and what that bail or those conditions may

The trial judge complied with the rule and considered other less restrictive alternatives before denying Hodges's motion to modify bond. At the hearing, the trial judge heard testimony by Hodges who proposed those less restrictive alternatives, including living at a homeless shelter, relying on Uber for transportation to court hearings, attending three support group meetings a week at local churches, and submitting to random drug and alcohol testing. (Doc. 1-2 at 19–20) Also, the trial judge considered the nature and circumstances of the charged offenses and Hodges's prior criminal history and appropriately determined that Hodges was charged with committing the petit theft at a homeless shelter (the same place where Hodges proposed to live), Hodges had failed to appear at other court hearings seventeen times, and Hodges had prior convictions for theft and robbery. (Doc. 1-2 at 21) These findings of fact are presumed correct on federal habeas. *Simon*, 454 F.2d at 163.

The trial judge concluded that "the bond, as set, [was] appropriate in order to [ ] [e]nsure the safety of the community and to [e]nsure that [ ] Hodges appears in court." (Doc. 1-2 at 21) The trial judge decided that the prosecution's interest in community safety and securing the presence of Hodges at trial outweighed Hodges's liberty interest in pretrial release on a lesser bond with other nonmonetary conditions. Because *Salerno* did not hold that a criminal defendant has a fundamental right to pretrial release and the trial judge's ruling was

---

be, the court may consider the nature and circumstances of the offense charged and the penalty provided by law; the weight of the evidence against the defendant; the defendant's family ties, length of residence in the community, employment history, financial resources, need for substance abuse evaluation and/or treatment, and mental condition; the defendant's past and present conduct, including any record of convictions, previous flight to avoid prosecution, or failure to appear at court proceedings; the nature and probability of danger that the defendant's release poses to the community; the source of funds used to post bail; whether the defendant is already on release pending resolution of another criminal proceeding or is on probation, community control, parole, or other release pending completion of sentence; and any other facts the court considers relevant." *See also* § 903.046, Fla. Stat.

12

rationally related to the prosecution's legitimate and compelling interests, Hodge's substantive due process claim fails. *Salerno*, 481 U.S. at 748–49.

Ground One is **DENIED**.

**Ground Two**

Hodges asserts that the state court violated procedural due process by not requiring the prosecution to prove the need for unaffordable bail by clear and convincing evidence. (Docs. 1 at 9 and 2 at 19–29) He contends that unaffordable bail implicates a significant deprivation of liberty and requires heightened procedural due process in the form of a stronger standard of proof. (Doc. 2 at 19–25)

### *Mathews* or *Medina*

The Respondent asserts that Hodges mistakenly relies on the balancing test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), for his procedural due process claim and contends that Hodges raises a challenge to a state rule of criminal procedure requiring a narrower inquiry under *Medina v. California*, 505 U.S. 437 (1992). (Doc. 15 at 14–17) Hodges replies that he does not challenge a state rule of procedure because no state rule imposes a burden or standard of proof for bond. (Doc. 18 at 18–22)

*Mathews*, 424 U.S. at 335, which governs a procedural due process challenge to an administrative procedure for disability benefits, requires consideration of the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Medina*, 505 U.S. at 443, holds that "the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which . . . are part of the criminal process." The opinion explains, "'it has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.'" *Medina*, 505 U.S. at 443–44. Consequently, *Medina*, 505 U.S. at 446–48, adopted the narrower approach in *Patterson v. New York*, 432 U.S. 197 (1977), which gives substantial deference to a state's legislative judgment in criminal procedure and criminal process and which requires consideration of whether a state rule of procedure (1) "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or (2) "transgresses any recognized principle of 'fundamental fairness' in operation."

The U.S. Supreme Court has not decided whether *Medina* or *Mathews* applies to a procedural due process claim challenging pretrial detention. *Kaley v. United States*, 571 U.S. 320, 333–34 (2014), reviewing a challenge to pretrial restraint of property in a criminal case, declined to decide whether *Medina* or *Mathews* applied. The opinion instead concluded that the defendants were not entitled to relief even under the less stringent standard in *Mathews*. *Kaley*, 571 U.S. at 334 ("We decline to address those arguments, or to define the respective reach of *Mathews* and *Medina*, because we need not do so. Even if *Mathews* applied here . . .[,] the Kaleys still would not be entitled to the hearing they seek.").

Likewise, *Jauch v. Choctaw Cty.*, 874 F.3d 425, 431–32 (5th Cir. 2017) (citations omitted), which reviewed a procedural due process challenge to the total deprivation of a bond hearing for ninety-six days, followed the same approach:

> As used in *Medina*, the phrase "part of the criminal process" has been described as "rules concern[ing], for example, the

14

> allocation of burdens of proof and the type of evidence qualifying as admissible." This is not a case about presumptions, evidence, or any workaday aspect of the process-in-action. This is a case about confinement with process deferred. Moreover, while Medina was premised on the "considerable expertise" of the states "in matters of criminal procedure and the criminal process" and represents "substantial deference to legislative judgments in this area," the procedure challenged here does not represent the legislative judgment of the state and indeed conflicts with the Mississippi legislature's decree that all defendants be arraigned within 30 days. There is thus room to argue that the *Mathews* test is more appropriate under the circumstances. Ultimately, we again follow the Supreme Court's example, choosing not to decide which test applies "because we need not do so."

*Jauch*, 874 F.3d at 432, concluded that, even applying the more stringent standard in *Medina*, the state court violated procedural due process.

Accordingly, this Court follows *Kaley*, declines to address whether *Medina* or *Mathews* applies, and concludes that, even under the less stringent standard in *Mathews*, Hodges does not demonstrate a violation of procedural due process. *Kaley*, 571 U.S. at 334.

**Merits**

Hodges asserts that the state court violated procedural due process by failing to determine, and by not requiring the prosecution to establish, a need for pretrial detention. (Docs. 1 at 9) He contends that "[d]etention resulting from an unaffordable monetary bail without complying with this procedure that guards against mistaken or unjustified deprivation of liberty violates the U.S. Constitution." (Doc. 1 at 9)

Under the three-pronged test in *Mathews*, "a court must weigh (1) the burdens that a requested procedure would impose on the Government against (2) the private interest at stake, as viewed alongside (3) 'the risk of an erroneous deprivation' of that interest without the

15

procedure and 'the probable value, if any, of [the] additional . . . procedural safeguard[ ].'" *Kaley*, 571 U.S. at 333 (citing *Mathews*, 424 U.S. at 335)). Hodges misapplies this test.

The "private interest at stake" is Hodges's pretrial liberty. *Kaley*, 571 U.S. at 333. The Court weighs Hodges's "private interest" against "the burdens that a requested procedure would impose on the Government." *Kaley*, 571 U.S. at 333. To that point, while Hodges has a strong interest in pretrial liberty, the government has a legitimate interest in community safety and securing the presence in court of a criminal defendant who may be a risk of flight. *Salerno*, 481 U.S. at 748–51. Requiring the prosecution to prove that interest by clear and convincing evidence imposes a significant burden, considering the high volume of misdemeanor and felony criminal cases in a state court located in a large metropolitan area. Lastly, while Hodges correctly evaluates "'the risk of an erroneous deprivation' of that interest without the procedure and 'the probable value, if any, of [the] additional . . . procedural safeguard[ ],'" Hodges fails to acknowledge that Florida law already implements procedural protections to ensure that evidence at a bond hearing is reliable and correct.

Police arrested Hodges for burglary of a dwelling (Doc. 15-1 at 1), which is defined as a dangerous crime under Section 907.041(4)(a)(16), Florida Statutes, and Rule 3.131(b) requires that pretrial services investigate the following before the court releases a defendant on nonmonetary conditions of bond:

> 1. The circumstances of the accused's family, employment, financial resources, character, mental condition, and length of residence in the community;
>
> 2. The accused's record of convictions, of appearances at court proceedings, of flight to avoid prosecution, or of failure to appear at court proceedings; and

> 3. Other facts necessary to assist the court in its determination of the indigency of the accused and whether she or he should be released under the supervision of the service.

Fla. R. Crim. P. 3.131(b)(4) ("No person charged with a dangerous crime, as defined in section 907.041(4)(a), Florida Statutes, shall be released on nonmonetary conditions under the supervision of a pretrial release service, unless the service certifies to the court that it has investigated or otherwise verified the conditions set forth in section 907.041(3)(b), Florida Statutes.").

Before Hodges's bond hearing, pretrial services investigated the relevant considerations and presented to the trial judge a report with findings. (Doc. 15-3 at 1–2) Pretrial services reported that Hodges had failed to appear at court hearings seventeen times and had an extensive criminal history, including convictions for burglary, petit theft, and receiving stolen property. (Doc. 15-3 at 2) At the bond hearing, the trial judge considered the nature and circumstances of the offenses described in the sworn probable cause affidavit for arrest. (Docs. 15-1 at 1–4 and 20-2 at 14–16) The nature and circumstances of the offenses, Hodges's criminal history, and his failure to attend court hearings were all relevant considerations at the bond hearing. Fla. R. Crim. P. 3.131(b)(3); § 903.046(2)(a), Fla. Stat. Like federal law, Florida law allows a trial judge to consider evidence at a bond hearing that may not be admissible under the rules of evidence. Fla. R. Crim. P. 3.131(b)(6); 18 U.S.C. § 3142(f). Hodges does not assert that either the sworn probable cause affidavit or the pretrial services report contained erroneous facts.

Hodges cites no U.S. Supreme Court opinion that requires the state court to determine, and the prosecution to establish, "a need for pretrial detention through the imposition of an unaffordable monetary bail based on clear and convincing proof." (Docs. 1

17

at 9). *Salerno* did not hold that procedural due process requires the heightened clear and convincing evidence standard. Congress created the Bail Reform Act which imposes that standard. 18 U.S.C. § 3142(f) ("The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.").[4]

*Salerno*, 481 U.S. at 751–52, evaluated a facial constitutional challenge to the Act and concluded that the Act complied with the procedural due process:

> Under the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination. Detainees have a right to counsel at the detention hearing. 18 U.S.C. § 3142(f). They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. *Ibid.* The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g). The Government must prove its case by clear and convincing evidence. § 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.
>
> We think these extensive safeguards suffice to repel a facial challenge. . . . Given the legitimate and compelling regulatory purpose of the Act and the procedural protections it offers, we conclude that the Act is not facially invalid under the Due Process Clause of the Fifth Amendment.

---

[4] Other U.S. Supreme Court opinions cited by Hodges hold that a clear and convincing evidence standard is required in a civil commitment proceeding — not a bond hearing in a criminal case. *Foucha*, 504 U.S. at 80 (civil commitment for an individual found not guilty of crime by reason of insanity); *Addington v. Texas*, 441 U.S. 418 (1979) (civil commitment for an individual suffering mental illness).

Even though the Florida legislature did not create identical legislation, Florida law implements procedural protections to ensure that evidence at a bond hearing is reliable and correct, and the trial judge in Hodges's case complied with Florida law to ensure that Hodges received the benefit of those protections.

Weighing the *Mathews* factors, the Court finds that the procedures implemented by the trial judge sufficiently protected Hodges's rights, particularly where the prosecution's legitimate and compelling interests in protecting the community and ensuring Hodges's attendance at trial outweighed his interest in pretrial liberty. *Salerno*, 481 U.S. at 748–49. Pretrial services complied with Florida law, investigated Hodges's background and criminal history, and provided the trial judge a report. The probable cause affidavit was based on a police officer's identification of Hodges in surveillance video depicting him commit the crimes. The trial judge derived findings of fact from these reliable reports to conclude that a reduced bond with other nonmonetary conditions was not appropriate. Under the specific circumstances of this case, the risk of erroneous deprivation of Hodges's pretrial liberty — without the heightened clear and convincing evidence standard — was minimal. The procedural safeguards under Florida law sufficiently protected Hodges's rights. *See Rasmussen v. Garrett*, 489 F. Supp. 3d 1131, 1166–67 (D. Or. 2020); *Hill v. Hall*, No. 3:19-cv-452, 2019 WL 4928915 at *17 (M.D. Tenn. Oct. 7, 2019).

The trial judge otherwise afforded Hodges adequate process. The trial judge held a hearing on Hodges's motion to reduce bond (Doc. 1-2 at 12–22), and appointed counsel who represented Hodges at the hearing. The trial judge afforded Hodges the right to testify at the hearing, and Hodges testified and proposed a reduced amount for bond with other nonmonetary conditions. (Doc. 1-2 at 15–19) If Hodges disputed facts in the probable cause

affidavit or the pretrial services report, he could have presented testimony or other evidence to rebut those reports. Also, the trial judge made specific findings at the hearing and relied on factors enumerated in Section 903.046(2) and Rule 3.131(b)(3) to determine that a reduced bond with nonmonetary conditions would not ensure Hodges's appearance in court and the safety of the community. Florida law afforded Hodges the right to immediately appeal the trial judge's ruling, Hodges exercised that right to appeal, and the state appellate court expeditiously ruled on that appeal. Fla. R. Crim. P. 3.131(d)(3). (Docs. 1-1 and 4-1). Because the state court provided Hodges adequate process, his procedural due process claim fails. *Salerno*, 481 U.S. at 751–52.

Ground Two is **DENIED**.

Accordingly, it is **ORDERED** that Hodges's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Hodges and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Hodges neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on April 1, 2022.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE